Anthony D. Prince (SBN # 202892)
General Counsel,
California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

Page |
- 1 -

**UNITED STATES COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SAN LUIS OBISPO COUNTY HOMELESS UNION, a local affiliate of the CALIFORNIA HOMELESS UNION, on behalf of itself, its members and current and former residents of the Oklahoma Parking Site; DAVID RICHFORD; DAN RICHFORD; TIM McELROY; LEON SHAHOIAN; DE DURLESSER; NAOMI DE LEON; MICHAEL MAEZ; NAOMIE DeGRAW; TREVA KATHAWAY and DOES 1-50, <br><br> vs. <br><br> COUNTY OF SAN LUIS OBISPO, a political subdivision of the State of California; COUNTY OF SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES, HOMELESS SERVICES DIVISION; DEVIN DRAKE, in his official capacity as Director of Social Services; MORGAN TERRELL in his official capacities as County Director of Homeless Services; JEFFREY AL-MASHAT, individually and in his official capacity as COUNTY PROGRAM MANAGER; COMMUNITY ACTION PARTNERSHIP OF SAN LUIS OBISPO COUNTY ("CAPSLO"), a non-profit County contractor; ELIZABETH STEINBERG, in her official capacity as CEO of CAPSLO; JACK LAHEY, in his official capacity as Director of Homeless Services for CAPSLO ("CAPSLO") and DOES 1-100, <br><br> Defendants | **Case No.:** <br><br> **CIVIL RIGHTS COMPLAINT** <br><br> **UNITED STATES CIVIL RIGHTS ACT (42 U.S.C. § 1983); First, Fourth, Fifth, Eighth and Fourteenth Amendments to the UNITED STATES CONSTITUTION; AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12132). ARTICLES 1, § § 1 and 7 of the CALIFORNIA STATE CONSTITUTION.** <br><br> **DEMAND FOR JURY TRIAL** |

*Complaint for Civil Rights*

# __INTRODUCTION__

1.      The County of San Luis Obispo is wrongfully exiting plaintiffs, including leading members of the San Luis Obispo County Homeless Union, from the Oklahoma Avenue Safe Parking Site, a lot near the County Jail previously designated in 2021 for persons living in trailers and RV's after the County, the cities of San Luis Obispo, Los Osos, Oceana and other towns in SLO County began aggressively enforcing ordinances prohibiting recreational vehicles serving as human habitations.

2.      Subsequently, in August of 2021, recognizing its own self-created "vehicular homeless" crisis, the County established the Kansas Avenue Safe Parking (later to be renamed "Oklahoma Avenue Safe Parking Village") across the highway from the County Jail and the San Luis Obispo Men's Colony prison. The County made numerous official statements at its website and in the media declaring that those who came to the site would be provided with the resources and direct assistance to obtain permanent housing. As quoted in a June, 2023 Civil Grand Jury report, the County's "Mission Statement" declared *"The Oklahoma Parking Site provides a temporary, safe, and sanitary space for vehicle-residing individuals and families to diligently engage with case managers and work toward brighter futures **by acquiring housing solutions.**"* (Report of the San Luis Obispo County Civil Grand Jury Report on the Oklahoma Safe Parking Village, June 12, 2023. (Emphasis added.)

3.      On January 11, 2022 the County of San Luis Obispo and the Community Action Partnership of San Luis Obispo (CAPSLO) entered into a contract regarding services for the Oklahoma Avenue Parking Village program. CAPSLO was the sole respondent under a Request for Proposal process. The Board of Supervisors reallocated $163,298 to the "project," to prevent, prepare for, and respond to the coronavirus. The term of the agreement ended on December 31, 2022. The contract was not been formally renewed, but CAPSLO continues to be at the site,

*Complaint for Civil Rights*

ostensibly to provide housing assistance and other services but, in reality, as discussed *infra*, CAPSLO is now assisting the County in its rush to push Plaintiffs out of the site so it can be closed.

4.     The aforementioned report of the SLO County Grand Jury found that the County and its contractor, the Community Action Partnership of San Luis Obispo ("CAPSLO") had provided effective housing assistance to only 17 people out of almost 100 original residents and caused the Safe Parking program to fail. The same report stated: "To better understand the work of CAPSLO at the Site, the Jury also requested information about CAPSLO's activities, actions, and outcomes. Specifically, the Jury requested copies of all data provided quarterly by CAPSLO to DSS in accordance with the case management contract. Although the Jury requested this documentation from DSS and from CAPSLO, the quarterly reports were not provided by either party and no explanation was given."

5.     As detailed in the Grand Jury's report of June, 2023, neither the County nor its contractor Community Action Partnership of San Luis Obispo County ("CAPSLO") delivered on promises to residents and failed to comply with federally-mandated due process protections owed to site residents who were exited on the basis of false charges of misconduct. As the Grand Jury would later find, the County failed to provide sufficient routine sanitation and maintenance services, adequate security, and, most importantly, any demonstrable evidence that either it or its contractor CAPSLO was making determined efforts to locate alternative housing for the residents.

6.     In response, in November, 2022, residents formed the San Luis Obispo County Homeless Union, an affiliated local of the California Homeless Union/Statewide Organizing Council. The Union organized security, food programs and representation for residents faced with arbitrary, unjust adverse actions perpetrated by Defendant County Program Manager Jeffrey Al-Mashat, who also functioned as on-site manager of the program. Union members drafted a set of demands and appearing at meetings of the SLO County Board of Supervisors and attracting the attention of local media.

*Complaint for Civil Rights*

7.      For its part, the County wasted no time retaliating against the residents for their exercise of their first amendment right of association. Al-Mashat promptly evicted Union president Nick Watson on trumped-up charges of misconduct for which no formal investigation was conducted and no due process provided. Security guards threatened residents with eviction if they attended Union meetings which were routinely surveilled by County and CAPSLO personnel.

8.      In February, 2023, in large part due to the fallout of the Civil Grand Jury report, the County announced its intention to close the Site, which had been renamed Oklahoma Village Safe Parking Site. Over the next six months, some in frustration having received no housing assistance, some fearing harm as security guards and County personnel permitted known drug dealers to be on the site, some who were able to find housing on their own or who owned drivable vehicles and were tired of the routine harassment, particularly from site manager Jeffrey Al-Mashat and some ejected based on false allegations of misconduct and Al-Mashat's refusal to provide any due process or listen to witnesses for the accused resident.

9.      Finally, in October, 2023, the County began imposing unconscionable contracts of adhesion misleadingly labeled "Relocation Assistance Agreements," discussed more fully below on the remaining residents.

10.      Most recently, on December 7, 2023, eight individual resident Union members - Treva Kathaway, Dan Richford, Naomie DeGraw, De Durlesser, Glen Zinn, Naomi deLeon, Jamie Arnold and Anthony Foster - were served with letters from Devin Drake, Director of Social Services for SLO County, advising the recipients that they had until December 15, 2023 to leave the site or be regarded as trespassers.[1] As stated in the letters, the justification for the County's decision

---

[1] Since the Union attorney intervened and talks were held with County counsel, the deadline to exit the recipients of the December 7 letters has been pushed back several times, most recently to February 2, 2024. However, the County has rejected the Union's proposal to suspend the evictions until an interim agreement and a process for providing residents with alternative housing arrangements can be reached and because there have been no further extensions, those who received the "exit" letters will be removed in less than two weeks. None of them have drivable vehicles or been provided with any safe place to go.

*Complaint for Civil Rights*

Page | - 4 -

is that each targeted resident "did not consider and/or pursue the prospective housing placements made available to you by service providers[.]"

11.     In fact, the "housing placements" that each resident was said to have failed "to pursu[e] with the necessary level of diligence and cooperation" were temporary shelters and other falsely described "pathways to permanent housing" that were either never offered at all, illusory, unaffordable, non-accessible, closed, full to capacity, located at distances that would make it impossible to remain at their current employment or still under construction such as the Pismo Terrace apartments, which are still under construction and for which no occupancy date has been announced.

12.     Thus, rather than intensify efforts to find housing for those to whom it was promised, now faced with the imminent closure of the Safe Parking Site, the County has instead decided to close the site, eject some two dozen, mostly elderly persons with disabilities and confiscate their mostly non-working vehicles. No plaintiff has been provided accessible, safe and appropriate shelter or housing by the County which is falsely accusing them of failing to "cooperate" and show "diligence" in pursuing "offers" which, as described in detail below, either do not exist, would place the ejected residents in more dangerous, even life-threatening circumstances, or result in the loss of their vehicles which would mean and *has* meant for some, already, exile into the streets and rural areas of the County where, as conceded by the County, itself,  they will be at an increased risk of great bodily harm and death.

13.     It is undisputed that San Luis Obispo County does not have sufficient shelter beds to accommodate its unsheltered homeless residents. Accordingly, as the winter of 2023-24 got underway the County declared a winter shelter emergency.  in a county where residents and former residents, including plaintiffs, describe "40 Prado" the County's largest mass congregant shelter operated by CAPSLO evidence shows overcrowding, health risks, and lack of safety measures at CAPSLO's "40 Prado Homeless Assistance Center," the County's largest shelter, and where the

*Complaint for Civil Rights*

1   "offers" of "pathways to housing" made by the Count to plaintiffs are either non-existent,

2   unaffordable, inaccessible or would entail increased risks of physical and psychiatric harm.

3        14.    No plaintiff has been offered or provided accessible, safe and appropriate shelter or

4   housing by the County which is falsely accusing them of failing to "cooperate" and show

5   "diligence" in pursuing offers of "pathways to housing" which either do not exist, would place them

6   in more dangerous circumstances, or result in the loss of their vehicles and exile into the homeless

7   streets and rural areas of the County where they will be at an increased risk of great bodily harm and

8   death.   Accordingly, plaintiffs now seek immediate relief from this Court.

9

## JURISDICTION AND VENUE

10

11        15.    This Court has jurisdiction based on 28 U.S.C. §§ 1331and 1343, 42 U.S.C. § 12132

12   and 42 U.S.C. § 1983, because Plaintiffs' claims are brought under the laws and Constitution of the

13   United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims, arise out of

14   a common nucleus of operative facts, and form part of the same case or controversy as Plaintiffs'

15   federal claims.

16

17        16.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)

18   because all the evens and omissions giving rise to the claims occurred or will occur in the Central

19   District, and all defendants are located in the Central District, in the Western Division, in San Luis

20   Obispo County. C.D. Cal. L. R. 83-1.1. .

21

22        17.    This is an action for violation of civil rights and for injunctive relief and declaratory

23   judgment pursuant to 42 USC Section 1983 and F.R. Civ. P. 23(b)(2) based upon ongoing

24   violations of rights belonging to persons living at the Oklahoma Safe Parking Site guaranteed by the

25   First, Fourth, and Fourteenth Amendments of The Constitution of the United States of America and

26   Article I, Section 1 of the California Constitution which defines "safety" as one of expressly

27   provided rights described as "inalienable."

28

*Complaint for Civil Rights*

Page |
- 6 -

# PARTIES

Plaintiffs

**18.**     **San Luis Obispo County Homeless Union** (hereinafter "SLOHU" or "the Union) is an affiliated local of the California Homeless Union/Statewide Organizing Council. The Union is an unincorporated association of unhoused and marginally housed persons which organizes, represents, advocates for and provides services to its members and the broader homeless community.

19.     SLOHU was formed two years ago by residents of the County-operated Kansas Safe Parking Site (later called "Oklahoma Parking Site"), a vacant lot in an unincorporated area of San Luis Obispo County upon which individuals and families living in recreational vehicles were allowed to remain while the County and CAPSLO ostensibly assisted them in finding durable, permanent alternative housing or other locations where they and their vehicular homes would be safe.

20.     The Union organized security, food programs and representation for residents faced with arbitrary, unjust evictions and other adverse actions perpetrated by Defendant County Program Manager JEFFREY AL-MASHAT, who also functioned as on-site manager of the program. Union members drafted a set of demands and began appearing at meetings of the SLO County Board of Supervisors and attracting the attention of local media.

21.     The response of the County to the formation of the Union was swift, hostile and heavy-handed. It's first president, site resident Nicholas Watson who lived in his trailer with his wife and two small children, was falsely accused by Defendant AL-MASHAT of being involved in a fight and, without any formal investigation or due process as required under ____CFR_____, was ejected from the site. The ejection of Nick Watson had a powerful chilling effect on the Union. Security guards, County employees and CAPSLO workers on site began a campaign of intimidation that ranged from making derogatory comments about the Union to telling residents "you have no rights" to surveilling Union meetings and planting informers, barring Union legal counsel from

*Complaint for Civil Rights*

entering the site and threatening residents that they would be exited if they joined the Union or attended Union meetings. For months, these tactics effectively crippled the Union and forced it divert resources to defending targeted leaders and the wrongful ejectment of dozens of site residents has had the effect of geographically scattering and separating Union members making it difficult to convene meetings and otherwise advocate for its members and the broader homeless community in San Luis Obispo County. Only now, in the face of the announced closing of the site, has the diminished, but still persevering Union been able to rebuild.

22.     Plaintiff **David Richford**, 61, resided at the Safe Parking Site from its inception in 2021 in a fifth-wheel (non-drivable) trailer. As is well-known to the County, Mr. Richford suffers from chronic obstructive pulmonary disease (COPD) and depends on an assisted breathing device which he carries with him at all times.

23.     On or about October 31, 2023, shortly after the County began imposing "Relocation Assistance Plans" on residents targeted for removal from the site, Mr. Richford was hospitalized for injuries sustained in a traffic accident. But while still recovering, he was informed that he would not be allowed to return to the Safe Parking Site on the orders of Defendant Site Manager JEFFREY AL-MASHAT due to the aggravation of Mr. Richford's respiratory condition for which AL-MASHAT refused to provide disability accommodations. The County neither offered nor provided any alternative housing, nor allowed him to retrieve his trailer which remained at the site for almost three months and now insists that Mr. Richford is now "safer" in a house belonging to a family member despite the pervasive presence of smoke, dirt and dust in the air along with other unsanitary condition which have further aggravated his COPD and has resulted in repeated returns to the hospital.

24.     While he was initially hospitalized following the motorcycle accident, CAPSLO caseworker Lauren Cook visited Mr. Richford and later, in an email dated November 27, 2023 sent to Jeff Al-Mashat, wrote "In talking with Dave, he is very stressed about needing to move his trailer

*Complaint for Civil Rights*

off the site by Thursday, 11/30. I reassured him that this is something I would help him figure out, and he should focus on resting and healing." However, only days after Homeless Union legal counsel Anthony Prince wrote County counsel protesting Mr. Richford's expulsion from the site, the County - with no notice whatsoever to Mr. Richford - had the trailer seized, towed and stored by "Johnboys Towing Co" miles away in the town of Oceana. Days later, Plaintiff David Richford received a letter notifying him that a lien had been place on his trailer, that he owed $945, so far, that storage fees in the amount of $125 per day would continue to accrue and if a lien sale took place, Mr. Richford would be responsible to pay the entire amount due, estimated to be $5,695.00. The letter caused Mr. Richford to panic, aggravating his COPD and bringing on an acute respiratory constriction and a coughing spell that made it difficult to breathe.  It was only hours later that he was even able to contact counsel for the Union.

25. After the Union intervened, the County agreed to bear the costs of towing and storage, but only for 90 days and without offering any other location where Mr. Richford can legally park his trailer – which is undrivable – without being again ticketed, towed and impounded. Thus, for all intents and purposes, Mr. Richford has lost his home and his "choice" is to either remain indoors in an environment of dust and dirt that is worsening his COPD or, deprived of his trailer, become homeless on the streets and backroads of the County where the cold and wet winter weather will seriously aggravate his COPD which could become life-threatening.

26. Plaintiff **De Durlesser** is a 54-year old female who grew up in San Luis Obispo and has resided at the Oklahoma Parking Site for one year. She lives in a tow hauler and has worked many years as a baker of gourmet chocolate but lost her business during the COVID-19 pandemic. Shortly thereafter, she lost her house and suffers from severe scoliosis, a spinal deformity. She also suffers from severe arthritis and has difficulty walking due to a bone graft on her hip.

27. As a resident of the Oklahoma site, Ms. Durlesser has been able to be safe from a documented stalker who has committed acts of violence and, more recently, made death threats

Page | - 9 -

*Complaint for Civil Rights*

against De and her mother of which both County and City of San Luis Obispo law enforcement have been made aware. If she is forced to leave the site, she will be immediately placed at increased risk of harm.

28.     On December 7th Defendant Devin Drake, Director of County Social Services, served a letter on M. Durlesser notifying her that she would be evicted on December 15th at 1:00pm. The Homeless Union was able to get several extensions of this deadline, but the County now plans to remove us on February 2, 2024, only days from now. The reasons provided for her imminent eviction was her alleged failure to pursue "pathways to housing" including applying for General Assistance, which, in fact, she had and was only awaiting required additional documentation from her physician; going to Hope Village, which has no housing whatsoever and "exists" only as a fundraising campaign; or going to the overcrowded, unsanitary and unsafe CAPSLO-operated "40 Prado" mass congregant shelter where she would be allowed to stay for only 90 days and would not be able to park—and therefore, ultimately lose, her RV. She has not been given an opportunity to appeal the decision to exit her from the site.

29.     Plaintiff **Michael Maez** is a 63-year old hotel worker and the president of the San Luis Obispo County Homeless Union who has resided since it was opened in 2021. He suffers from a vision disability that prevents him from driving at night and, therefore, given his assigned hotel shift, must remain close to the City of San Luis Obispo.

30.     In November, 2022, Mr. Maez became one of the principal organizers and a high-profile leader of the San Luis Obispo County Homeless Union. As such, Mr. Maez witnessed first-hand how the County intimidated and threatened the residents who dared to join together. For example, in advance of a planned visit to the site by Union attorney Anthony Prince, and anticipating interference by County personnel, Plaintiff Maez circulated a sign-up sheet on which all persons wishing to meet with Mr. Prince signed their names. But before he arrived, site security guards systematically knocked on every trailer door, threatening residents with removal from the

*Complaint for Civil Rights*

site if they dared attend the meeting and, indeed, only a handful showed up. Nevertheless, and despite the intimidation, Mr. Maez and other Union leaders have persisted as the prosecution of this lawsuit clearly shows.

31.     Over the two and half years that he has been at the site, neither the County nor CAPSLO has ever assisted Mr. Maez in obtaining alternative housing or providing a campground where he could remain for any significant amount of time. He has called numerous County and State-operated RV campgrounds and learned that they are all either full or unaffordable. In addition, County campgrounds require parkers to leave after 28 days of continuous occupancy and will not permit relocation to any other County campground until another 28 days have elapsed.

32.     In October, 2023, Plaintiff Maez was made to sign a "Relocation Assistance Plan" which would provide him with a voucher worth $1,000 and require him to leave the site but which provided no alternative housing arrangements, let alone any that would facilitate his ability to remain in the area so as to retain his employment. If Mr. Maez and his wife are exited from the Oklahoma site, there will be nowhere for he and his wife to legally park their trailer without the risk of its being towed.

33.     Plaintiff **Treva Kathaway** is a disabled 65-year-old female who works as a caregiver and caretaker for vacation rentals and in local hotels. She has been living in a 5th wheel trailer at the Oklahoma Avenue Parking Village for the last 2 and a half years. The trailer requires a fifth wheel hitch to tow. If she is exited from the Site she will be unable to afford to hire a person to move the trailer in order to avoid ticketing and towing and will become homeless.

34.     On December 7, 2023, she was served with a letter signed by Devin Drake, Director of Social Services for San Luis Obispo County notifying her that she would be "exited" from the site seven days later for failing to "cooperate" and "show diligence" pursuing three "pathways to housing" that the County claims were offered; specifically, "a private property to park your trailer

in Santa Margarita," "A private property to park your trailer in Nipomo" and "Entry into the 90-Day Program at CAPSLO 40 Prado, a mass congregant homeless shelter."

35.     However as she explained to "Melissa" (last name unknown) a case worker for Defendant CAPSLO, all three of these options would put her in a worse position because: 1) the private property in Santa Margarita, 20 miles from San Luis Obispo, is located on a steep hill in a fire area where there is no cell phone reception and, therefore, would she could not summon help in an emergency; 2) the owners of the property, who do not live there, did not allow any visitors and thereby deprive her of the assistance she needs; 3) the 40 Prado shelter will not allow her RV on site, would limit her stay to 90 days and is infamous for overcrowding, unsanitary and unsafe conditions. With regard to relocating her trailer 30 miles away to a private property in Nipomo, her fixed income would make it impossible for her to pay the parking fees of close to $1,000 per month. She has no place to go and if the Oklahoma Site is closed she will lose her trailer and be in the streets.

36.     Plaintiff **Tim McElroy** had been living with two other persons, Leon Shahoian and Brittany Anderson in a non-drivable fifth wheel trailer at the Oklahoma Site for about a year when, in October, 2023, he attended a meeting at which Defendant Jeffrey Al-Mashat, Program Manager for SLO County informed him that they had until January 15, 2024 to leave the site but that everyone would be able to "access new shelter opportunities" and that the County would help pay for housing.

37.     However, in mid-November, Defendant JEFF AL-MASHAT came to his trailer without any warning and told them they had to leave within an hour. They had received no prior notice, nor were provided an explanation or opportunity to appeal the decision to be removed. He packed as much as he could into a small storage container which he was told would be stored for 90 days. However, when he returned 30 days later to retrieve his belongings, he discovered that everything in the storage container had been thrown out. Currently, Mr. McElroy, like his former

RV roommate Leon Shahoian, is surving out of sleeping bags and his backpack on the streets of San Luis Obispo. He cannot use a tent because the City of San Luis Obispo prohibits there use in public spaces. His health has seriously deteriorated since leaving Oklahoma Site.

38.     Most recently, Mr. McElroy sustained an injury to his arm due to living on the street. With no access to showers or hygiene facilities—which exist at the Oklahoma Site, he has been unable to properly clean and keep dry the wound which has now become infected with a severe case of cellulitis causing extreme pain for which he had to go to the emergency room where he was prescribed an intensive regimen of antibiotics.

39.     Plaintiff **Terry Stagliano** has lived at the site for two years. She stays in a 1986 Winnebago which is not working and requires a new carburetor which CAPSLO staff promised to replace three months ago but to date has not. In October 2023 she was made to sign a letter indicating that she "agreed" to leave the site by January 15, 2024 in "exchange" for receiving a gift card on the day she leaves for "up to $1,000" in value for "relocation needs such as fuel, hotel stays, security deposits down payments or rent." However, as she informed CAPSLO, she is currently on a list of current Oklahoma site residents who have applied for, but not yet been approved for units at Pismo Terrace, an apartment complex that is still under construction with no specific ready for occupancy date provided.

40.     Plaintiff Stagliano has osteoarthritis in both knees, cannot walk without using a walker and a cane and does not have a car or any other mode of transportation. Other than a weekly food giveaway at the Oklahoma site, she is completely dependent on her daughter to go to the doctor, get prescriptions filled, go to the store or look for an affordable apartment, since CAPSLO has failed to help her locate or provide any assistance with housing. She remains at the site, living in her trailer, beyond the "agreed-upon" exit date of January 15, 2024 and, therefore, subject to immediate removal or arrest as a trespasser, per the terms of the unconscionable contract of adhesion she was made to sign. If she is forced to leave, she will be unable to have the use of her

trailer, which the County will tow away, and will have nowhere to go and the exposure to the cold and wet winter weather will severely aggravate her osteoarthritis, especially in her joints making it virtually for her to walk at all.

41.     Plaintiff **Leon Shahoian** is a construction worker who resided for one year at the Oklahoma site in a fifth wheel trailer he shared with Tim McAvoy and another resident. In October, 2023, he was present at a general meeting of the residents during which County Program Manager Jeffrey Al-Mashat announced that the site was closing but that all residents would be able to access new housing opportunities.

42.     However, one month later in mid-November, Al-Mashat came to his trailer and without any warning ordered him to leave within one hour. He was unable to retrieve all but a few possessions from the trailer which was then towed to the back of the property where it remained until Brittany Anderson, who remained in the trailer, was herself exited from the site. Unable to rest and becoming exhausted trying to survive on the streets, he was fired from his job as a gas station attendant after falling asleep on the job and was denied unemployment compensation.

43.     Deprived of the tools of his trade with him, which he was not permitted to retrieve from the trailer despite repeated attempts to secure permission to do so, he was finally permitted to access a storage container only to realize that all of his personal property, including the tools, had been thrown out.  Currently, he walks four miles a day to get food, water and to find a bathroom. Stores and resources in San Luis Obispo are very spread out, and there is little public transportation available. He lives in a sleeping bag and out of his backpack lacking even a tent because they are prohibited by the City of San Luis Obispo. I don't even have a tent because the City of San Luis Obispo prohibits tents which are routinely seized as soon as they are spotted by local police.

44.     Plaintiff **Dan Richford** is a 63 year-old former forklift operator, warehouse worker, handyman and founding member of the San Luis Obispo County Homeless Union who suffers from severe arthritis and hip dysplasia. His only income is General Assistance which pays $351 a month.

*Complaint for Civil Rights*

He has lived in his tow-behind trailer at the Oklahoma Avenue Safe Parking Site for over two years and in that entire time case managers from CAPSLO have met with him only two times and at no time has he ever been offered, provided with or assisted in obtaining affordable housing of any kind.

45.    On December 7th 2023 Defendant JEFFREY AL-MASHAT served him with a letter from DEVIN DRAKE, Director of Social Services for SLO County stating that he would be "exited" seven days later because he had "failed to cooperate" with efforts to place him in a mass congregant homeless shelter operated by CAPSLO known as "40 Prado." CAPSLO will not permit him to bring a specialized orthopedic mattress without which he would be unable to sleep due to his disabilities.

46.    Over the last two years he has performed voluntary services for his fellow residents including fixing broken showers, making repairs to trailers and operating a Food Pantry. He has no vehicle to tow his trailer, and it will almost certainly be impounded if he is exited from the site and he will become homeless. He will also be deprived of the tools of his trade and an accessible place to store them and will therefore be unable to earn money. On the street, the cold and rain will aggravate his arthritis and make it almost impossible for him to walk.

47.    Plaintiff **Naomi DeGraw** is a 54-year year old woman with who grew up in San Luis Obispo who has lived in her trailer at the Oklahoma Avenue Parking Village for over a year. Previously, her non-drivable trailer was impounded by the County and she had to pay nearly every penny she had to retrieve it. The County also took her automobile, which she was not able to retrieve. She had to move into the Oklahoma Avenue Parking Village to avoid getting her trailer, which serves as her home, impounded.

48.    She had a small business that dried up during the COVID-19 pandemic and lost the house she once lived in. She broke her back at age 14 and suffers from scoliosis which required the implantation of a Harrington rod which broke in 2005 but cannot be removed. She also suffers from

severe arthritis and the effects of a bone graft on her hip. Ms. DeGraw is also the victim of a local stalker who has abused both her and her mother and from whom she has been protected by being in her trailer at the Safe Parking Site.

49.     When she first came to the site, she was told that she would be connected to housing but instead has been shuffled between four different CAPSLO case workers, none of whom have provided any housing assistance. On December 7, 2023 she received a letter from Devin Drake stating that she would be evicted on December 15th at 1:00pm. (Because the Homeless Union attorney became involved, the County pushed the exit date for her and seven others who received the letters to January 5, 2024 and then again, to February 2, 2024. However, most recently the County has rejected the Homeless Union's request for another extension.)

50.     The "exit" letter gave as the reason for the decision to evict her allege failure to apply for General Assistance, but, in fact, she has applied and is currently waiting for her doctor to fill out required forms. She was also accused of not pursuing housing at "Hope's Village" but in fact, Hope Village, is nothing more than a fundraising campaign for "tiny homes" and currently has no housing whatsoever to offer.

51.     Finally, Ms. DeGraw was charged with refusing to go to "40 Prado," a "low barrier" mass congregant homeless shelter that limits stays to 90 days, does not have space for her trailer and is overcrowded, unsanitary and where the has admission requirements are so lax that she fears that her stalker could find her there. If the Safe Parking Site is allowed to close, she will lose everything and become homeless.

Defendants

52.     Defendant **County of San Luis Obispo ("SLO County" or "County")** is a political subdivision of the State of California, existing under the laws of the State of California with capacity to sue and be sued.

*Complaint for Civil Rights*

53.     Defendant **Derek Drake** is the Director of Social Services for the County of San Luis Obispo. He is sued in his official capacity.

54.     Drake was the author of at least eight letters dated December 7, 2023 notifying residents falsely alleging their failure to "cooperate" or show "diligence" in pursuing "pathways to housing" and notifying them that they must exit the site seven days later on December 15, 2023. Although the letters advised that the recipients could "contact your case manager or a County representative directly" with "any questions or concerns,"

55.     Drake failed to reply or even acknowledge a letter sent to him, at Drake's request, Union counsel Anthony D. Prince listing the residents' concerns and requesting evidence of the residents' alleged "lack of cooperation." Although the original December 15 deadline has been extended several times, the County has now set February 2, 2024 as the firm date by which all eight recipients must leave the site or face arrest as trespassers.

56.     Defendant **Community Action Partnership of San Luis Obispo** ("CAPSLO") CAPSLO is a nonprofit agency that describes itself as "helping people and changing lives through serving over 26,000 persons across Central and Southern California, the majority of whom live in San Luis Obispo County" with a focus that ostensibly includes "addressing barriers to safe, affordable housing and basic needs." As a contractor under the supervision of and working in collaboration with the County, employees of CAPSLO act as agents for the County, failing to provide genuine housing assistance, providing false information to the County to justify the removal of Plaintiffs and in exerting pressure on Plaintiffs to leave the site.

57.     In a June, 2023, report on its investigation of the Oklahoma Safe Parking Site, the San Luis Obispo County Civil Grand Jury had this, among other things, to say about CAPSLO:

> "To better understand the work of CAPSLO at the Site, the Jury also requested information about CAPSLO's activities, actions, and outcomes. Specifically, the Jury requested copies of all data provided quarterly by CAPSLO to DSS [County Department of Social Services] in accordance with the case management contract**.** Although the Jury requested this

*Complaint for Civil Rights*

documentation from DSS and from CAPSLO, **the quarterly reports were not provided by either party and no explanation was given."**

--Report of the Civil Grand Jury, June, 2023 (Emphasis added.)

58.     Defendant **Elizabeth Steinberg** is the Chief Executive Officer of CAPSLO. She is sued in her official capacity.

59.     Defendant **Jack Lehay** is the Director of Homeless Services for CAPSLO. He is sued in his official capacity.

60.     Defendant **Jeffrey Al-Mashat** is the Program Manager for CAPSLO and Site Manager for the Oklahoma Safe Parking Site. He is sued individually and in his official capacity.

## **FACTUAL ALLEGATIONS**

61.     In a report issued in June of 2023, concerning the Oklahoma Safe Parking Site, a San Luis Obispo County Civil Grand Jury observed that "[o]ne of the fastest growing segments of the homeless population has been the number of individuals and households living in vehicles. Job loss, major medical expenses, eviction, and escaping from domestic violence are some of the many reasons that can lead to life in this precarious form of shelter. This trend is not limited to California cities, but is seen in suburban and rural communities, including San Luis Obispo County."

62.     The Grand Jury noted that according to the annual "Point in Time" count of February, 2022, 370 persons, approximately 25% of the County's 1,448 homeless, were living their vehicles, concluding that "vehicular homelessness is an acute issue in San Luis Obispo County." The County and nearly all cities within SLO County have "met" this crisis by outlawing the presence of recreational and other vehicles in which otherwise homeless families and individuals reside with grievous civil and criminal penalties.

63.     This prohibition applies to all public property within unincorporated San Luis Obispo County under Ordinance 3460, and permits the County to imposed fines and to seize people's

vehicular domiciles if the "(1) contains a person or persons sleeping therein, or (2) contains bedding arranged for the purpose of, or in such a way as will permit, the occupants thereof to remain overnight shall be deemed a violation of this section. This prohibition is extended to a number of coastal communities as well including but not limited to the City of San Luis Obispo, the Town of Cayucos, the Town of Oceana and the Town of Los Osos.

64.     As a result of these measures, scores of RV's have been seized, towed, stored and irretrievably lost to their former residents which, in turn, has led to a dramatic increase in the number of unsheltered persons on the streets and in the rural areas of the County.  RV bans in the smaller towns pushed those still living in their RV's and those who had lost their vehicular homes into the City of San Luis Obispo proper, adding to the pressure on the County do find an out-of-the way location where RV dwellers could safely park.

**Creation of the Kansas Avenue Safe Parking Site**

65.     In 2021, San Luis Obispo County allocated $500,000 to the County Administrative Office "CAO" to open a safe parking site and make it available to the County's vehicular homeless population. The County then designated a County-owned vacant lot at the corner of Kansas Avenue and Oklahoma Avenue across the road from a Sheriffs sub-station, the County Jail and the California Mens Colony state prison.

66.     The CAO awarded the contract to CAPSLO to operate the County-owned lot for residents to live in. The United State Department of Housing and Urban Development ("HUD") awarded certain Emergency Solutions Grant ("ESG") entitlement program funds (Catalog of Federal Domestic Assistance #14.231) to San Luis Obispo County. The County used ESG funding to establish a 24 hour/ 7 day a week safe parking site located at Kansas Avenue, and the Community Action Partnership of San Luis Obispo ("CAPSLO") was contracted as a subrecipient.

67.     Code of Federal Regulations governing the ESG which include, *inter alia,* the right of persons receiving services to appeal any adverse action resulting in the termination of such

*Complaint for Civil Rights*

services as set forth in 24 C.F.R. §576 which requires "written notice to the program participant containing a clear statement of the reasons for the termination [and] a review of the decision, in which the program participant is given the opportunity to present written or oral objections before a person other than the person (or a subordinate of that person) who made or approve the termination decision."

68. However, over the entire life of the Oklahoma Site, up to the filing of this lawsuit, not a single one of the many residents who were exited based on allegations of misconduct or failure to cooperate with efforts obtain housing was ever given an opportunity to appeal the decision to terminate services and remove them and their non-drivable trailers from the site.

69. After minimal site preparation, Kansas Avenue Safe Parking (as the program was originally named) was opened in August 2021.RV dwellers who came to the site were made to sign an "Agreement" that contained a broad and facially unconscionable waiver releasing the County from all liability for any actions taken by the County or any harms to the residents arising from their residency. The "Agreement" made no reference to the statutory right to appeal the discontinuance of any service as set forth in 24 C.F.R. §576 and, was thereby, *void ab initio* as an unconscionable and fraudulent contract of adhesion.[2]

---

[2] As discussed in *Tunkl v. Regents of University of California, 60 Cal.2d 92, 32 Cal. Rptr. 33, 383 P.2d 441 (Cal. 1963)*, Cal Civ Code § 1668 states that "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law. When applied to public services, the *Tunkle* court explained that public services generally cannot create exculpatory clauses for damages caused by their negligent acts. The court explained:

"As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services… In insisting that the patient accept the provision of waiver in the contract, the hospital certainly exercises a decisive advantage in bargaining. The would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital. The admission room of a hospital contains no bargaining table where, as in a private business transaction, the parties can debate the terms of their contract. As a result, we cannot but conclude that the instant agreement manifested the characteristics of the so-called adhesion contract."

In the case at hand, there was no substantive bargaining opportunity for these proffered contracts. The contract was related to a public service, which was essential to the lives of Plaintiffs. The contracts included exculpatory clauses,

*Complaint for Civil Rights*

**The Contract Between SLO County and CAPSLO**

70.     On January 11, 2022 the County of San Luis Obispo and Community Action Partnership of San Luis Obispo ("CAPSLO") entered into a contract to provide housing assistance services.

71.     Community Action Partnership of San Luis Obispo County "CAPSLO" is a local private and public non-profit organization that carries out the Community Action Program (CAP), which was founded by the 1964 Federal Economic Opportunity Act. CAPSLO is one of the largest non-profits on the Central Coast with annual receipts of $75,600,730. CAPSLO receives the majority of their funding from federal, county and city government awards and grants.

72.     This contract was a contract to CAPSLO as a subcontractor for federal block grant to the County from United State Department of Housing and Urban Development ("HUD"). HUD awarded the county an Emergency Solutions Grant ("ESG") entitlement program funds (Catalog of Federal Domestic Assistance #14.231) governed by 24 C.F.R. §576, et. seq.Safe parking was defined by the County "as a transition space so that individuals using the program can make plans, arrangements and steps toward permanent housing. Case management is a key component of achieving permanent housing." The County also promised to participants entering the program that "Case managers will be available to transition individuals towards appropriate resources and/or into permanent housing and shelter options."

73.     CAPSLO and the County were intertwined in administering the site. CAPSLO would hand out notices, contracts, and other documents to Plaintiffs bearing the County's letterhead and logo. The result was that the Oklahoma Avenue Parking Village is completely a County program, but that has certain parts of it implemented by a subcontractor pursuant to the contract.

---

most egregiously, the waiver of liability. Under *Tunkle*, all of the elements of adhesion are manifest in the "Agreement" and render it unenforceable.

*Complaint for Civil Rights*

74.     In concluding the contract with the County, CAPSLO agreed to hire 1.5 full time employees "FTE" for peer advocate support, 1.25 FTE case managers, .25 operations, and .1 FTE supervisors. (Page 34 Contract). It also agreed to provide quarterly reports about progress at the site connecting people to housing services. Yet, as set forth in the June, 2023 report of the County Civil Grand Jury, neither CAPSLO nor the County ever provided quarterly reports to anyone, including the Grand Jury, itself. In addition, CAPSLO never hired a peer advocate, case managers came to the site inconsistently and the high turnover was such that case managers would only work for a few months at the site, then move on leaving their clients in a lurch.[3]

75.     The result was that CAPSLO consistently failed to assist site residents in any meaningful and substantial way. In February of 2023, adding insult to injury and making the residents pay the price for its own failure, the County announced its intention to close the Oklahoma Safe Parking Site.

**The "Relocation Assistance Program": Contracts of Adhesion, Fraud, and Unconscionability**

76.     In October, 2023, at a general meeting of the residents, County Project Manager Defendant JEFFREY AL-MASHAT, while still insisting that all residents would be provided with "supportive housing' announced, nevertheless, that the site would be closed and the County would require "Relocation Assistance Agreements" to be signed.

77.     Under these agreements, the County would provide a gift card with a value of "up to $1,000" to residents who agree to move off the parking site by a set date. The County described the program as follows: "Developing each individual's Relocation Assistance Plan is intended to be a collaborative effort between the county, Community Action Partnership of San Luis Obispo County and each resident, to make a plan that fits the individual's relocation needs, according to the

---

[3] Prior to filing this lawsuit, Counsel for Plaintiffs repeatedly requested, and all residents signed authorizations to release to the Union attorney any and all records pertaining to housing assistance or other services provided by either the County or CAPSLO. County counsel failed, and has failed, to provide a single such document.

*Complaint for Civil Rights*

contract." In "exchange" for agreeing to leave the site, the "Relocation Assistance Plan" form contained check boxes for "assistance" including the gift cards—which they could not receive until the day they were required to leave the site - assistance in repairing vehicles, towing of inoperable vehicles off the site, a bus or train ticket out of town, a voucher for temporary camping at a County Park, and assistance with trash removal. There was also a check-box that read "Relocation to other supportive housing at [left blank]."

78.    However, demonstrating the failure of Defendants to locate and provide assistance to residents to actually obtain housing, on none of the Agreements thus far provided to Plaintiffs' counsel is this box checked at all or, if it is, the "supportive housing" written in was either the CAPSLO-managed 40 Prado mass congregant homeless shelter, "Hope's Village," which has no housing to offer and continues to be  nothing more than a fundraising campaign or, in some cases, Pismo Terrace, an apartment complex that is still under construction and for which no occupancy date has been announced.

79.    In fact the "Relocation Assistance Agreement" is nothing more than yet another one-sided, unconscionable contract of adhesion to mask what Defendants are actually doing, i.e., forcing the residents out with a few pieces of silver and without any safe, durable or permanent place to go. Even if the somehow people are able to get their trailers off the site and into the street, the vehicles will be towed pursuant to the County because it is illegal to use RV's and similar vehicles as human habitations under San Luis Obispo County Code § 15.710.050.

80.    In addition, whether or not they are being used as homes, trailers cannot be parked on a given street for more than 72 hours. For those whose vehicles are not self-powered, this means repeatedly hiring a tow company, something that plaintiffs cannot afford. Unable to comply with the RV use and parking restrictions, plaintiffs face the permanent loss of the only thing they own that affords protection from the dangers of being homeless on the streets of San Luis Obispo County.

*Complaint for Civil Rights*

**FIRST CAUSE OF ACTION**

**Cruel and Unusual Punishment; Excessive Fines (Eighth Amendment to the U.S. Constitution; 42 U.S.C. §1983; Art. 7) 173.**

81.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein. The acts and omissions of Defendants, as described herein, violate the constitutional rights of Plaintiffs to be free from actual or threatened cruel and unusual punishment and excessive fines.

82.    The Eighth Amendment prohibition against cruel and unusual punishment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977). The Supreme Court has interpreted the scope of those limitations to find that laws criminalizing an individual's status, rather than specific conduct, are unconstitutional.

83.    The Ninth Circuit has extended the protections of Eighth Amendment prohibitions on criminalization of status to people who are involuntarily homeless. In *Martin v.* Boise, 902 F.3d 1031 (9th Cir. 2018), the Court held that criminalizing unavoidable the unavoidable conduct by persons who are involuntarily homeless to be unconstitutional.  "[T]he principle ... that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *Id*. In *Johnson v City of Grants Pass,* 72 F.4th 868 (9th Cir. 2022),he Court affirmed *Martin* stating that cities "cannot enforce its anti-camping ordinances to the extent they prohibit the rudimentary precaution a homeless person might take against the elements."

84.    Defendant COUNTY OF SAN LUIS OBISPO enacted a law that universally criminalizes a rudimentary precaution that Plaintiffs rely on for their survival – to be able to safely park and remain in their RV's and trailers. SLO Code 19.02.030 (2) states "It shall be unlawful to… use a travel trailer or recreational vehicle for residential purposes, except in an approved campground or recreational vehicle park."

*Complaint for Civil Rights*

85.     Violation of SLO Code 19.02.030 (2) is punishable under SLO Code 1.04.010 (A) "No person shall violate any provisions or fail to comply with any of the mandatory requirements of this code. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this code is deemed guilty of a misdemeanor, unless by ordinance it is made an infraction."

86.     Defendant SLO County has thus violated the 8th Amendment by enacting a criminal sanction for using an RV as a place for human habitation while at the same time deciding to close the Safe Parking Site without first having effectively assisted Plaintiffs to locate and obtain safe, indoor, accessible and durable alternative housing or locations where they can afford to safely park their RVs rather than have them ticketed, towed and for all practical purposes lost. Coupled with the undisputed lack of available, accessible shelter space, Plaintiffs' "choice" is either to refuse to leave the site and be deemed trespassers subject to arrest or be exiled into the streets and back roads of the County to face the dangers inherent in becoming an unsheltered homeless person, dangers which the County itself admitted when, on July 20, 2023, it approved "The San Luis Obispo Five Year Plan to Address Homelessness":

> The toll of homelessness on the individual experiencing homelessness is well established. The average life expectancy for someone experiencing homelessness is approximately 25 years shorter than those with stable housing. Homelessness exacerbates existing health problems and causes new ones, both with chronic conditions (such as diabetes) and acute problems (such as infections and injuries). Accumulated trauma from insecure and at times dangerous situations can contribute to an unhoused individual's behavioral health challenges. It is difficult to manage one's health and heal when there is no place to rest and recuperate.

> --*The San Luis Obispo Five Year Plan to Address Homelessness*, July 20, 2023

## SECOND CAUSE OF ACTION

**Right to Substantive Due Process: State-Created Danger (Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

87.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

88.     In outlawing the use of RV's for human habitation, restricting the presence of RV's on County streets and closing the Oklahoma Safe Parking Site without having provided safe, accessible alternative housing to the residents thereof, Defendant County of San Luis Obispo and its agent CAPSLO have shown deliberate indifference to and affirmatively increased the known risks of harm by way of Plaintiffs becoming unsheltered homeless persons in violation of their right to bodily integrity and substantive due process under the 14th Amendment to the U.S. Constitution.

## **THIRD CAUSE OF ACTION**

**Right to Substantive Due Process: State-Created Danger (Article I, Section 7 of the California Constitution); (Article I Section 1 of the California Constitution: Inalienable Right to Safety)**

89.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

90.     In outlawing the use of RV's for human habitation, restricting the presence of RV's on County streets and closing the Oklahoma Safe Parking Site without having provided safe, accessible alternative housing to the residents thereof, Defendant County of San Luis Obispo and its agent CAPSLO have shown deliberate indifference to and affirmatively increased the known risks of harm by way of Plaintiffs becoming unsheltered homeless persons in violation of their right to bodily integrity and substantive due process under Article I Section 7 of the California Constitution as well as their inalienable right to safety under Article I, Section I of the California Constitution.

## **FOURTH CAUSE OF ACTION**

**Unlawful Seizure of Property (Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

91.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

*Complaint for Civil Rights*

92.     By the warrantless and unreasonable seizure, towing and impounding of Plaintiffs' vehicles from the Safe Parking Site and from areas where RV's are serving as human habitations and thus violating County regulations, thereby preventing Plaintiffs' access to and use of their vehicles and risking permanent deprivation of same, Defendants violate the 4th and 14th Amendments of the United States Constitution.

## FIFTH CAUSE OF ACTION

### Right to Due Process of Law (Article I, Section 7 of the California Constitution)

93.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein. forth herein.

94.     By the warrantless and unreasonable seizure, towing and impounding of Plaintiffs' vehicles from the Safe Parking Site and from areas where RV's are serving as human habitations and thus violating County regulations, thereby preventing Plaintiffs' access to and use of their vehicles and risking permanent deprivation of same, Defendants violate Article I, Section 7 of California Constitution.

## SIXTH CAUSE OF ACTION

### Violation of Americans with Disabilities Act (42 U.S.C. Section 12132)

95.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

96.     By closing the Oklahoma Safe Parking Site without first providing alternative housing and/or substantive housing assistance and placing Plaintiffs with disabilities at risk of becoming homeless, where their disabilities will become aggravated and they will face even greater survival challenges than non-disabled unsheltered homeless, Defendants violate the Americans With Disabilities Act.

## SEVENTH CAUSE OF ACTION

*Complaint for Civil Rights*

**Violation of Procedural Due Process, Equal Protection of the Laws (14th Amendment to the Constitution of the United States)**

97.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

98.     The 14the Amendment protects against the deprivation of life, liberty or property without due process of law and the denial of the equal protection of the laws. Defendants failed to provide due process expressly set forth in the Contracts between the County and CAPSLO to Plaintiffs accused of misconduct, failure to cooperate or lack of "diligence" in the pursuit of so-called "pathways to housing" and who were either removed or are currently facing removal from the Oklahoma Safe Parking Site.

**EIGHTH CAUSE OF ACTION**

**First Amendment to the United States Constitution: Free Speech, Free Association**

99.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

100.     The First Amendment to the United States protects the right to free speech and free association. Defendants egregiously interfered with these rights belonging to Plaintiff residents of the Oklahoma Safe Parking Site to form, belong to the San Luis Obispo Homeless Union and thereby provide a collective voice  by wrongfully ejecting Union leaders, threatening residents with removal from the site if they attended Union meetings or met with the Union legal counsel, conducting surveillance of Union meetings and telling residents that the Union "wasn't doing anything for them." In this way, Defendants violated the associational and representational rights of the Union, itself, as an affiliated local of the California Homeless Union/Statewide Organizing Council.

**JURY DEMANDED**

## **PRAYER FOR RELIEF**

101.    An actual controversy exists between Plaintiffs and Defendants as to each and every Cause of Action alleged herein. Plaintiffs claim that these Defendants' acts and policies, practices and/or customs are contrary to law and seek a declaration of their rights with regard to this controversy.

102.    As a direct and proximate consequence of The Defendants' acts and those of their agents and employees, Plaintiffs have suffered loss and damages including injuries to their persons and loss of their essential personal property needed for their well-being and dignity.

103.    Plaintiffs will continue to suffer ongoing and continuous injuries unless Defendants are restrained by this Court. Defendants' policies, practices, customs and actions will result in irreparable injury to Plaintiffs. Plaintiffs have no other plain, adequate or complete remedy at law to address the wrongs described herein.

WHEREFORE, Plaintiffs respectfully request relief as follows:

1.    For a preliminary injunction and a permanent injunction enjoining and restraining Defendants from exiting any current residents of the Oklahoma Avenue Safe Parking Village or closing the Site until the following steps have been taken:

    a.    The Parties shall meet and confer on the establishment of an effective process of locating, determining the availability and evaluating the suitability of and providing safe, accessible, affordable and long-term indoor housing or, where appropriate, accessible, safe, affordable and long-term parking for residents who wish to remain housed in their RV or trailer;

    b.    The process shall entail formal meetings involving each resident, a representative of the County, a representative of the San Luis Obispo Homeless Union, resourced housing providers, and, where appropriate, homeless service providers

*Complaint for Civil Rights*

and others as necessary to accomplish the objective of securing alternative housing or safe parking for each resident;

 c. Any former resident who was removed for alleged misconduct or failure to cooperate in pursuing genuine housing opportunities and was denied the opportunity to file an appeal shall be entitled to a hearing before a neutral fact-finder designated by the Court or by agreement of the Parties. If the fact-finder determines that the former resident was wrongfully removed, he/she/they will be entitled to participate in the process described in Section (b);

 d. The County and CAPSLO shall produce to the Court, the County Civil Grand Jury the records and documents that the Grand Jury requested but were not provided during its investigation of the Oklahoma Safe Parking Site;

2. For a declaratory judgment that Defendant County of San Luis Obispo's policies, practices and conduct as alleged herein violate Plaintiffs' rights under the United States Constitution, the California Constitution and the Americans With Disabilities Act declaring that:

 a. The County's ordinances prohibiting the presence of RV's serving as human habitation are unconstitutional;

 b. The County's ordinances requiring the relocation every 72 hours of RV's parked on County roads and streets are unconstitutional;

 c. The County's failure to provide reasonable disability accommodations to Safe Parking Site residents with qualifying disabilities violates the Americans With Disabilities Act;

3. That the Court oversee, either directly, or by way of a designated magistrate judge or special master, the creation and implementation of the process for providing alternative housing as set forth in Paragraph 1. of the Prayer for Relief;

4. Damages according to proof for the loss of personal property, including but not limited to RV's and other vehicles used as or to support human habitation resulting from Defendants' unlawful conduct  and deliberate indifference according to proof;

5. For punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable laws or statutes, in an amount sufficient to deter and make an example of the Defendants;

6. For prejudgment interest according to proof;

7. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. §§ 1983, 1988, and any other applicable provisions; and

8. For such further relief which the Court deems just and proper.

Dated: January 22, 2024               Respectfully submitted,

                                      */s/ Anthony D. Prince*

                                      Anthony D. Prince (SBN 202892)
                                      General Counsel,
                                      California Homeless Union/
                                      Statewide Organizing Council
                                      Law Offices of Anthony D. Prince
                                      princelawoffices@yahoo.com
                                      2425 Prince Street, Ste. 100
                                      Berkeley, CA 94705
                                      P: 510-301-1472

**VERIFICATION**

I, Michael Maez, President of the San Luis Obispo County Homeless Union, verify that the foregoing complaint and the allegations therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 22, 2024                          */s/ Michael Maez*

Executed at San Luis Obispo County                    Michael Maez

*Complaint for Civil Rights*