RITA L. NEAL, Bar No. 151156
San Luis Obispo County Counsel
rneal@co.slo.ca.us
1055 Monterey Street
San Luis Obispo, CA 93408
Telephone: (805) 781-5400
Facsimile: (805) 781-4221

JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER M. PISANO, Bar No. 192831
christopher.pisano@bbklaw.com
BEST BEST & KRIEGER LLP
300 South Grand Avenue
25th Floor
Los Angeles, California  90071
Telephone:   (213) 617-8100
Facsimile:   (213) 617-7480

Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SAN LUIS OBISPO COUNTY HOMELESS UNION, a local affiliate of the CALIFORNIA HOMELESS UNION, on behalf of itself, its members and current and former residents of Oklahoma Parking Site; DAVID RICHFORD; DAN RICHFORD; TIM McELROY; LEON SHAHOIAN; DE DURLESSER; NAOMI DE LEON; MICHEL MAEZ; NAOMIE DeGRAW; TREVA KATHAWAY and DOES 1-50,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN LUIS OBISPO, a political subdivision of the State of California; COUNTY OF SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES, HOMELESS SERVICES DIVISION; DEVIN DRAKE, in his official capacity as Director of Social | Case No. 2:24-CV-00616-AB-MAA<br>Assigned to Hon. Andre Birotte, Jr.<br><br>**COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>*[Filed Concurrently with:*<br>*1. Declaration of Linda Belch;*<br>*2. Declaration of Jeffrey Al-Mashat;*<br>*3. Declaration of Christopher M. Pisano*<br>*4. Declaration of John Ansolabehere;*<br>*5. Declaration of Lawren Ramos*<br>*6. Request for Judicial Notice]* |

1  Services; MORGAN TERRELL in his
2  official capacities as County Director of
   Homeless Services; JEFFREY AL-
3  MASHAT, individually and in his
   official capacity as COUNTY
4  PROGRAM MANAGER;
   COMMUNITY ACTION
5  PARTNERSHIP OF SAN LUIS
   OBISPO COUNTY ("CAPSLO") a non-
6  profit County contractor; ELIZABETH
   STEINBERG, in her official capacity as
7  CEO of CAPSLO; JACK LAHEY, in
   his official capacity as Director of
8  Homeless Services for CAPSLO
   ("CAPSLO") and DOES 1-100,

9        Defendants.

Judge:        Andre Birotte, Jr.
Action Filed: 01/23/2021

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

61835.00103\42001503.3

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 8

II.     STATEMENT OF FACTS .................................................................. 10

        A.      Background of the Oklahoma Parking Village .................................. 10

                1.      The Program was Started to Give People Temporary
                        Relief; i.e. a Safe Place to Park Their Vehicles While they
                        Look for a More Permanent Housing Solution ........................ 10

                2.      The County has Operated and Managed the Site Since the
                        Inception of the Program, While the County Hired
                        CAPSLO to Provide Case Management Services ................... 10

                3.      The County has used a Variety of Funding Sources to
                        Maintain the Oklahoma Parking Village and to pay
                        CAPSLO for its Case Management Services .......................... 11

        B.      While There Have Been Successes, The Program Faced
                Challenges From the Beginning, Including Crime and Other
                Problems, and it is not Operating as it was Intended.......................... 12

        C.      Plaintiffs Formed a Union in About October 2022, And Since
                Then Plaintiffs and Their Counsel have Obstructed the County's
                and CAPSLO's Efforts to find them Housing Alternatives................ 14

        D.      The County Announced that it Would Close the Site in February
                2023 and has been Working to Find Housing for the Remaining
                Participants; There are Housing Alternatives that are Available ....... 15

        E.      The County will not Seize Property When the Site Closes, And
                There is no Evidence that the County will Impose Criminal
                Sanction on Anyone who Parks Overnight......................................... 16

III.    LEGAL ARGUMENT ...................................................................... 16

        A.      Standard of Review for a Temporary Restraining Order................... 16

        B.      There is no Urgency Justifying this Application for a TRO;
                Plaintiffs can and should Seek to Obtain Relief Through a
                Noticed Motion Process ................................................................. 17

        C.      Plaintiffs are not likely to succeed on the Merits of their Claims ...... 18

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TRO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**TABLE OF CONTENTS**
(continued)

**Page**

1.    Plaintiffs are not Likely to Succeed on the Merits of Their Eighth Amendment Claim ........................................................ 19

2.    Plaintiffs are not Likely to Prevail on the Merits of Their Fourteenth Amendment Claim for a State-Created Danger ..... 21

3.    Plaintiffs are not Likely to Prevail on the Merits of Their Claims for Unlawful Seizures of Property, or Denial of Due Process ................................................................................ 24

4.    Plaintiffs are not Likely to Prevail on the Merits of Their First Amendment Claim ............................................................ 25

D.    The Remaining Factors Weigh Heavily Against a TRO ................... 26

1.    Plaintiffs Cannot and do not Show Irreparable Injury ............. 26

2.    The Balance of Equities Tilts in the County's Favor ............... 26

IV.    CONCLUSION ................................................................................................. 27

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TRO

1

## TABLE OF AUTHORITIES

2
**Page**

3

4
**Federal Cases**

5
*Alliance for Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 16

6

7
*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*
    750 F.2d 1470 (9th Cir.1985) ................................................................. 26

8

9
*Brittain v. Hansen*
    451 F.3d 982 (9th Cir. 2006) ................................................................. 22

10

11
*Campbell v. Facebook*
    951 F.3d 1106 (9th Cir. 2020) ................................................................. 20

12

13
*Caribbean Marine Servs. Co. v. Baldrige*
    844 F.2d 668 (9th Cir.1988) ................................................................. 26

14

15
*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ................................................................. 17

16

17
*Disney Enters., Inc. v. VidAngel, Inc.*
    869 F.3d 848 (9th Cir. 2017) ................................................................. 17

18
*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014) ................................................................. 26

19

20
*Frank v. City of St. Louis*
    458 F.Supp.3d 1090 (E.D. Mo. May 2, 2020) ................................................................. 20

21

22
*Fuentes v. Shevin*
    407 U.S. 67 (1972) ................................................................. 24

23

24
*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*
    736 F.3d 1239 (9th Cir. 2013) ................................................................. 26

25

26
*Hernandez v. City of San Jose*
    897 F.3d 1125 (9th Cir. 2018) ................................................................. 22

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TRO

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page**

4

*Idaho v. Coeur d'Alene Tribe*
5
    794 F.3d 1039 (9th Cir. 2015) ............................................................................ 24

6

*Kim v. City of Belmont*
7
    2018 WL 500269 (N.D. Cal. 2018) ................................................................... 17

8

*Lavan v. City of Los Angeles*
    693 F.3d 1022 (9th Cir. 2012) .......................................................................... 24
9

10

*Lewis v. Casey*
    518 U.S. 343 (1996) ......................................................................................... 17
11

12

*Lujan v. Defs. Of Wildlife*
    504 U.S. 555 (1992) ......................................................................................... 20
13

*Martin v. City of City of Boise*
14
    920 F.3d 584 (9th Cir. 2019) ..................................................................... 8, 19, 20

15

*Martinez v. City of Clovis*
16
    943 F.3d 1260 (9th Cir. 2019) .......................................................................... 22

17

*Miralle v. City of Oakland*
18
    2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ............................................. 19, 20

19

*Mission Power Engineering Co. v. Continental Casualty Co.*
    883 F.Supp. 488 (C.D. Cal. 1995) .................................................................... 17
20

21

*Munger v. City of Glasnow Police Dept.*
    227 F.3d 1082 (9th Cir. 2000) .......................................................................... 22
22

23

*Murguia v. Langdon*
    61 F.4th 1096 (9th Cir. 2023) ........................................................................... 22

24

*NAACP v. Alabama*
25
    357 U.S. 449 (1958) ......................................................................................... 25

26

*Navarro v. City of Mountain View*
27
    2021 WL 5205598 (N.D. Cal. Nov. 9, 2021) ..................................................... 23

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

**TABLE OF AUTHORITIES**
(continued)

**Page**

*People of City of Los Angeles Who Are Unhoused v. Garcetti*
  2023 WL 8166940 (C.D. Cal. Nov. 21, 2023) ....................................................21

*Sinclair v. City of Seattle*
  61 F.4th 674 (9th Cir. 2023) .........................................................................22, 23

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) ...........................................................................................20

*Sullivan v. City of Berkeley*
  2017 WL 4922614 (N.D. Cal. Oct. 31, 2017) ....................................................19

*United States v. Jacobson*
  466 U.S. 109 (1984) ...........................................................................................24

*Vaccaro v. Sparks*
  2011 WL 318039 (C.D. Cal. Jan. 28, 2011) .......................................................16

*Winslow v. City of Oakland*
  2020 WL 1031759 (N.D. Cal. Mar. 3, 2020) .................................................8, 19

*Winter v. Natural Res. Def. Council*
  555 U.S. 7 (2008) ....................................................................................16, 17, 26

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TRO

# I.      **INTRODUCTION**

The County of San Luis Obispo ("County") opposes Plaintiffs' *ex parte* application for a temporary restraining order ("TRO").  It is well settled law in this circuit that local governments are not required to provide housing to persons who are homeless, nor must they designate public space for temporary housing for an indefinite period of time. *Martin v. City of City of Boise,* 920 F.3d 584, 617 (9th Cir. 2019); *Winslow v. City of Oakland,* 2020 WL 1031759, at *3 (N.D. Cal. Mar. 3, 2020).  Yet this is seemingly what Plaintiffs are asking this Court to order.  By this application Plaintiffs are asking this Court to enjoin the County from closing the Oklahoma Parking Village, and also from enforcing an Ordinance that does not apply to the entire County, or even impose criminal sanction for overnight parking. Worse yet, Plaintiffs ask this Court to order the County to work with Plaintiffs, as well as people who have even left the site, to find them "long term" housing. Dkt. 12-1.  The injunctive relief sought would practically keep this site open indefinitely, and it would effectively make the County a guarantor of housing for Plaintiffs and countless others.  The law does not and cannot force this.

The Oklahoma Parking Village referenced in the complaint and *ex parte* application was opened in August 2021.  It was always intended to be a temporary place for people who were living in their vehicles to park for a brief period of time (i.e. no more than 90 days) while they sought a more permanent housing solution. It was never intended to be a permanent housing location for those living in their vehicles.  Unfortunately, that is what it has become.  The site has devolved into a dangerous location, and it is a tremendous drain on the County's resources.

While the Oklahoma Parking Village was started with the best of intentions, and while it helped many of the participants, it is no longer operating as intended. Over one-year ago, in February 2023, the County announced that it was closing the site and ending this temporary program.  Since that time the County and its contract

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

1    case management provider, Community Action Partnership of San Luis Obispo
2    County ("CAPSLO"), have worked with the remaining participants to find them a
3    more permanent housing solution.  At present there are only 21 people at the site,
4    which is down from its high point of 75 people.  The County has deferred the
5    closure date multiple times in order to further accommodate the last remaining
6    participants.  At some point this program must come to an end.

7         The County has opted to end this temporary (and voluntary) program, and
8    close the site, on March 18, 2024.  There is nothing in the record that would suggest
9    that any plaintiff will have his/her constitutional rights violated when this program
10   ends.  There is nothing in the record suggesting that any of the remaining persons at
11   the site will have nowhere to go and no means to exit when they are asked to leave
12   the site.  There is nothing in the record suggesting that anyone's right to be free
13   from cruel and unusual punishment, right to due process, right to be free from an
14   unreasonable seizure, or to any other constitutional rights, will be infringed.  In
15   short, there is nothing in the record that would demonstrate that Plaintiffs are likely
16   to prevail on the merits.

17        Also, the balance of equities tips in the County's favor.  The Oklahoma
18   Parking Village is not safe.  There have been numerous health and safety problems
19   since the program's inception, including multiple fires and other property damage
20   at the site, and even multiple deaths.  There is high crime, and the program is
21   simply not being used as it was intended, i.e. as a "temporary" parking spot while
22   participants looked for a more permanent housing solution.  The closure of this site
23   has been over a year in the making, and it needs to come to an end.  The County
24   cannot continue with this open-ended drain on its general fund until such time as it
25   is somehow able to secure long-term housing for the 21 individuals that remain.
26   Finally, Plaintiffs have not and cannot show urgency that would otherwise compel
27   the issuance of a TRO.  The Court should deny this *ex parte* application.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

## II.   STATEMENT OF FACTS

### A.   Background of the Oklahoma Parking Village

1.   *The Program was Started to Give People Temporary Relief; i.e. a Safe Place to Park Their Vehicles While they Look for a More Permanent Housing Solution*

The Oklahoma Parking Village was opened in August 2021.  This program was approved by the Board of Supervisors to provide people living in their vehicles a safe place to temporarily park, and get their vehicles off the streets, while they worked with case managers to find more permanent housing.  Belch Decl., ¶ 3; Al-Mashat Decl., ¶ 4.  This project site was initially called the "Kansas Safe Parking Program" because the entrance road was on Kansas Avenue.  However, the term "Safe Parking Program" had been trademarked and so the County stopped using that name.  Also, there was a fire at the site in February 2022, and after that an official address was established for emergency responders.  The address is 855 Oklahoma Avenue, and the site is now commonly known as the "Oklahoma Parking Village." Al-Mashat Decl., ¶ 3.

The County set up this temporary site, and the assets and services that were brought in, including fencing, restrooms, showers etc., were intended to be temporary.  The program participants, including the named Plaintiffs in this lawsuit, all signed an agreement upon entry, which provides that they are not to stay longer than 90 days.  Al-Mashat Decl., ¶ 4; Belch Decl., ¶ 9, Exs. "1," "2." However, for various reasons, this 90-day limit was never enforced.  Al-Mashat Decl., ¶ 4.

2.   *The County has Operated and Managed the Site Since the Inception of the Program, While the County Hired CAPSLO to Provide Case Management Services*

The County has been responsible for operating and managing the Oklahoma Parking Village since its inception.  The County has provided daily cleaning of the restrooms, showers and handwashing stations.  The County also arranged for daily transportation so that people can receive additional services, including attending

medical appointments, job appointments, and a weekly trip to a laundromat.  The County has also arranged for regular garbage pickup, and has funded other services like vehicle repair and maintenance.  The County also arranged for numerous other services to be provided from nonprofits.  But while various nonprofits have assisted in providing services, the management of the site has always been the County's responsibility since the inception of the program.  Al-Mashat Decl., ¶¶ 5-6.

In January 2022 the County entered into a contract with CAPSLO to provide case management services.  CAPSLO is a nonprofit that helps homeless persons within the County, including those persons residing at the Oklahoma Parking Village, with finding a more permanent housing solution.  CAPSLO helps low income people achieve economic self-sufficiency through community-based programs.  This includes assisting people in finding affordable housing.  CAPSLO case workers have been on the site since early 2022 and have helped many program participants find a more permanent housing solution.  Al-Mashat Decl., ¶ 6; Belch Decl., ¶ 6; See Maez Decl., Ex. "B; See also https://capslo.org/.  CAPSLO case workers remain onsite at the Oklahoma Parking Village today, and they are trying to find a more permanent housing solution for the remaining people at the site. Ramos Decl., ¶ 5.

3.   *The County has used a Variety of Funding Sources to Maintain the Oklahoma Parking Village and to pay CAPSLO for its Case Management Services*

The Board of Supervisors initially earmarked $460,000 of general fund money for management and operation of the site.  The management and operation has now been funded by a total of $856,255 from the County's general fund, $1 million from funds the County obtained from the American Rescue Plan Act ("ARPA"), and a one-time community grant of $40,000 from the San Luis Obispo Council of Governments.  There have been no other funding sources for the management and operation of the Oklahoma Parking Village.  To date, the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

program's management and operation has cost the County a total of $1,896,255, with an average monthly cost of $65,388.  This does not include payments to CAPSLO, or staff time costs.  Belch Decl., ¶¶ 4, 7-8.

The County has paid CAPSLO from different funding sources.  From February 2022 to the end of 2022, the County paid CAPSLO using funds from a United States Department of Housing and Urban Development ("HUD") grant award known as an Emergency Solutions Grant ("ESG").  At the end of 2022, the CAPSLO contract expired, and the County no longer funded CAPSLO using ESG grant funds.  From January 1, 2023 to the present, CAPSLO has been providing assistance to people at the Oklahoma Parking Village without a written contract, and the County has been paying CAPSLO using a combination of ARPA and California Emergency Solutions and Housing funds, which cover activities that help people get shelter and supportive services.  To date the County has paid CAPSLO $119,837 for their work in helping people at the Oklahoma Parking Village find a more permanent housing solution.  All total, the County has paid over $2 million to fund this site, and has incurred significant staff time for the operation and management of the site.  Belch Decl., ¶ 8.

### B. While There Have Been Successes, The Program Faced Challenges From the Beginning, Including Crime and Other Problems, and it is not Operating as it was Intended

Overall there have been some program successes.  Since the site was opened there have been 115 people who have lived at the site, and 67 have successfully moved on to other housing.  At its high point there were approximately 75 people living at the Oklahoma Parking Village, and as of today there are only 21 people remaining, which includes six of the nine individually named Plaintiffs.  Belch Decl., ¶ 11; Al-Mashat Decl., ¶ 10; See Maez Decl., Ex. "D."

But while there have been some successes, the program has been plagued by difficulties since its inception.  By January 2022, which was around the time the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

County was just engaging CAPSLO to provide case management services, the site was already at capacity.  Around this time some of the project participants were expressing that they wanted a level of self-control and self-governance at the site. They voiced their desire to manage the site themselves, and to limit the County's role to basic services like cleaning and garbage removal.  Al-Mashat Decl., ¶ 7.

However, in February 2022 one of the recreational vehicles caught fire and burned, and the occupant of that vehicle unfortunately perished.  Following that incident, the County resisted the participants' efforts to self-manage the site, which caused resentment among participants toward the County's management. Al-Mashat Decl., ¶ 8.  In March of 2022, one of the participants who was pushing for self-governance was removed by the County because he had assaulted another project participant, and caused that person to suffer serious head trauma.  Al-Mashat Decl., ¶ 9; Ansolabehere Decl., ¶ 4, Ex. "1."

These incidents in early 2022 were not isolated.  In the first 15 months of the program Sheriff's Deputies responded to 493 calls for service at the site, and some participants were arrested and jailed for drug sales and drug possession, as well as theft.  In April 2022 there was a death from a drug overdose, and around that time Sheriff's Deputies removed three other participants from the site for drug use and possession.  Also there have been multiple fires at the site, where either a vehicle or gasoline container caught fire.  Al-Mashat Decl., ¶¶ 11-12.

It has also been a challenge for the County to keep the site clean.  Despite daily cleaning, there is routinely garbage and debris left outside of participants' vehicles at the site.  There is no electricity at the site, and so power can only come from generators and running vehicles.  This creates a need for fuel storage at the site, and there are often exposed fuel storage containers that pose both a health and safety, and environmental risk.  Al-Mashat Decl., ¶ 13.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

61835.00103\42001503.3                                                   - 13 -

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1    At bottom, this program was designed to be a "temporary" place for people

2 living in their vehicles to stay, i.e. for no more than 90-days. Yet some project

3 participants have been at the site for over two years now, and all of the named

4 Plaintiffs have been at the site for at least a year. This program is not operating as

5 intended. Al-Mashat Decl., ¶¶ 14-15.

6    **C.    Plaintiffs Formed a Union in About October 2022, And Since Then**

7    **Plaintiffs and Their Counsel have Obstructed the County's and**
     **CAPSLO's Efforts to find them Housing Alternatives**

8    Plaintiffs' counsel Mr. Prince first entered the scene in around October 2022.

9 It was around this time that the San Luis Obispo County Homeless Union was

10 formed.[1]  The County did not react by ejecting the Union's leader, as Plaintiffs'

11 allege. This individual was ejected for fighting and knocking a man unconscious,

12 which happened in March 2022, which was seven months before the Union was

13 supposedly formed. Al-Mashat Decl., ¶ 9; Ansolabehere Decl., ¶ 4, Ex. "1."

14    Since Plaintiffs' counsel came on to the scene, the County and CAPSLO

15 have had a difficult time in trying to find housing for the remaining individuals at

16 the site. Some of the remaining participants do not seem interested in working with

17 CAPSLO to try to find alternative housing, and Plaintiffs' counsel has even gone so

18 far as to try prevent one of his clients from moving forward with a signed lease that

19 will get this individual out of living in his vehicle and into housing. Ansolabehere

20 Decl., ¶ 10, Ex. "4"; Pisano Decl., Ex. "4."

21

22

23

24    [1] Plaintiffs' counsel Mr. Prince states in his Declaration that he was involved in
     forming the union in October 2021. See Prince Decl., ¶ 3. The date in Mr.
25    Prince's Declaration is likely a typographical error, as there was no notice to the
     County of a Union forming until October 2022. Al-Mashat Decl., ¶ 9; Ansolabehere
26    Decl., ¶ 4. The Declaration of Michael Maez shows that this Union was formed in
     or around October 2022, not 2021. Mr. Maez attaches as Exhibit "A" "a number of
27    documents reflecting the early work of the Union at the site." Maez Decl., ¶ 4, Ex.
     "A." These documents are dated in November and December of 2022. Id.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**D.**    **The County Announced that it Would Close the Site in February 2023 and has been Working to Find Housing for the Remaining Participants; There are Housing Alternatives that are Available**

In February 2023 the County Board of Supervisors made the decision to close the site.  At that point no new program participants were allowed to come on to the site, and County staff was tasked with wrapping up the program, and trying to find a more permanent housing solution for those individuals who were already there.  Al-Mashat Decl., ¶ 9.

In October 2023, the County offered relocations assistance to all persons still on the site.  This included financial assistance and in exchange for the person indicating a date certain by which he/she would leave the site.  The financial assistance was in the form of a debit card to be provided upon departure, or other forms of assistance were offered, e.g. vehicle repairs to make a vehicle operable, a bus, train or plane ticket to reunite with family, or a voucher for temporary camping at a County park.  For those who chose to participate, the County provided relocation plan agreements.  All of the named Plaintiffs in this action, with the exception of De Durlesser, signed these relocation plan agreements, and the dates of departure for each have passed.  Belch Decl., ¶ 10, Ex. "3."

The County has extended the closure date of the program multiple times.  The closure date is now set for March 18, 2024, which was conveyed to Plaintiffs and their counsel on February 2, 2024.  In other words, Plaintiffs were given over six weeks' notice that the site would be closing, and that they needed to work with their CAPSLO case managers to find alternate housing.  Ansolabehere Decl., ¶ 9.

There is alternate housing that is available for the participants at the site.  As Linda Belch explains, there are a number of interim and supportive housing projects that are currently open that can potentially accommodate the people remaining at the Oklahoma Parking Village.  Belch Decl., ¶¶ 13-15; See also Pisano Decl., Ex. "4"; Ansolabehere Decl., Ex. "4"; https://capslo.org/40-prado/.

**E.** **The County will not Seize Property When the Site Closes, And There is no Evidence that the County will Impose Criminal Sanction on Anyone who Parks Overnight**

The County is currently planning for the closure of the site. One aspect of that planning is what the County will do with recreational vehicles or other property that Plaintiffs may leave when the site closes. Any vehicles that are left will either be towed to a nearby yard, or will remain onsite. But under either scenario, the County is going to pay all costs associated with towing and 90-days of storage. This will give anyone who leaves their vehicle or other belongings ample time to retrieve their property following the closure of the site. Al-Mashat Decl., ¶ 17.

## III.   LEGAL ARGUMENT

### A.   Standard of Review for a Temporary Restraining Order

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011). Temporary restraining orders are subject to standards similar to those governing preliminary injunctions. *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008).

Because it is an "extraordinary remedy", a plaintiff seeking a temporary restraining order "must establish" that: (1) he/she is likely to succeed on the merits of the claims; (2) he/she is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest (the *Winter* Factors). *Winter*, 555 U.S. at 20-21. Alternatively, injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Even under this alternative sliding scale test, plaintiffs must meet all four *Winter* factors. *Id*. at 1132, 1135. The 'likelihood of success on the merits"

is the most important of the *Winter* Factors.  *Disney Enters., Inc. v. VidAngel, Inc.,* 869 F.3d 848, 856 (9th Cir. 2017).

In addition, where, as here, an injunction is sought against the actions of a public entity, a higher showing is required on the immanency of the threatened harm.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also Kim v. City of Belmont*, 2018 WL 500269, at *14 (N.D. Cal. 2018) ("The Court has held that recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers ... in the absence of irreparable injury which is both great and immediate.").  The Separation of Powers Doctrine, too, counsels caution in issuing injunctions intended to control a state or local public entity. *See Lewis v. Casey*, 518 U.S. 343, 349–50 (1996).

### B.    There is no Urgency Justifying this Application for a TRO; Plaintiffs can and should Seek to Obtain Relief Through a Noticed Motion Process

"The rules contemplate that regular noticed motions are most likely to produce a just result." *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F.Supp. 488, 491 (C.D. Cal. 1995).  To justify relief on an *ex parte* basis, a moving party must demonstrate with competent evidence two things: "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.  As to the first showing: "[I]t will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial."  *Id.*

For the reasons more fully explained below, Plaintiffs have not established any likelihood of success on the merits.  Also, Plaintiffs have not shown urgency that would justify the issuance of a TRO on an ex parte basis, and to the extent

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

1  there is an emergency, it is one that has been created entirely by Plaintiffs. The

2  Oklahoma Parking Village will remain open until March 18, 2024, which is still

3  almost three weeks out. The County notified Plaintiffs and their counsel of this

4  closure date on February 2, 2024, which at that time gave over six-weeks' notice.

5  Plaintiffs could have brought this as a noticed motion, and Plaintiffs seemingly

6  were preparing to file some type of application for interim injunctive relief as early

7  as February 6, 2024. See Pisano Decl., Ex. "1." Plaintiffs could have filed a noticed

8  motion at that time, which would have given the County a fair opportunity to

9  present an opposition. Plaintiffs did not do so, and instead waited three weeks to

10  bring this application. That is unfair to the County, and this application should be

11  denied for that reason alone.

12  Also, as stated, there is still time before the planned closure date, and there

13  are 21 people at the site. The County and CAPSLO are working to try to find these

14  people alternate housing so that they have somewhere to go when the site closes.

15  Based on these facts there is simply no reason to grant a TRO. The Court should

16  allow the County and CAPSLO to continue their ongoing efforts to find housing

17  alternatives for these remaining people. An immediate injunction is not needed for

18  that to happen.

19  **C.    Plaintiffs are not likely to succeed on the Merits of their Claims**

20  Plaintiffs' *ex parte* application should be denied because Plaintiffs cannot

21  succeed on the merits of their claims. Plaintiffs assert challenges under the Eighth

22  Amendment's prohibition against cruel and unusual punishment, the Fourteenth

23  Amendment's state-created danger exception, the Fourteenth Amendment's right to

24  due process, the Fourth Amendment's right to be free from an unreasonable seizure,

25  and the First Amendment's right of association. Plaintiffs also assert violations of

26

27

28

procedural due process.[2]  The claims are deficient on their face, which Plaintiffs appear to concede.  See Pisano Decl., Exs. "2", "3".  Plaintiffs intend to file a first amended complaint, and so there is not yet an operative complaint to attack.

           1.     *Plaintiffs are not Likely to Succeed on the Merits of Their Eighth Amendment Claim*

Courts in the Ninth Circuit have repeatedly held that the Eighth Amendment does not require local entities to provide housing, and that there is no constitutional right for homeless persons to occupy public property indefinitely.  *Martin, supra,* 920 F.3d at 617; *Winslow, supra,* 2020 WL 1031759, at *3; *Miralle v. City of Oakland,* 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018); *Sullivan v. City of Berkeley,* 2017 WL 4922614, at *4 (N.D. Cal. Oct. 31, 2017).

The Eighth Amendment claim fails for three reasons.  First, Plaintiffs have not alleged, nor proved, that there are no shelters or other housing alternatives that are available in the County.  In *Martin,* the Ninth Circuit issued a "narrow" holding, finding only that the Eighth Amendment prohibits cities from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to.  *Martin, supra,* 920 F.3d at 617.  Plaintiffs do not allege, or prove, that they have nowhere to go, and that they must remain at the site in order to engage in life-sustaining activities.  *Id.*

As the evidence shows, there are other shelters, e.g. 40 Prado, that are available to Plaintiffs, and that can serve as temporary housing.  See Belch Decl., ¶¶ 13-15.  Plaintiffs may not want to go to 40 Prado, or any other temporary shelter, because those are not long-term permanent housing solutions. See e.g. Kathary Decl., ¶ 17; Derlesser Decl., ¶ 13; Zinn Decl., ¶¶ 4-6.[3] That fact does not render the

---

[2] Plaintiffs also assert a claim under the Americans with Disabilities Act, but they do not raise this claim or address its merits in the application.

[3] Plaintiffs all complain that 40 Prado is dirty, and they cite that as an excuse for not wanting to go there.  But  40 Prado scored quite will in a recent inspection, and 40 Prado offers a variety of services that can benefit Plaintiffs.  See Pisano Decl., Exs. "5" and "6."

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

closure the Oklahoma Parking Village a violation of the Eighth Amendment. *Martin* holds only that "a municipality cannot criminalize such behavior [sleeping in public] consistently with the Eighth Amendment when no sleeping space is practically available in any shelter." *Id.* at 617-18.  There are sleeping spaces in shelters that are "practically available," but Plaintiffs are simply choosing not to use them.  This is not an Eighth Amendment violation. *Id.*

Second, Plaintiffs cannot prevail on this claim because the County is only closing this one area of public property that had been made available for temporary parking.  The County voluntarily chose to open, and has paid over $2 million, for this temporary parking site, and the County has now decided to close it.  The County is not "criminalizing" the act of being homeless, rather it is merely closing a location.  This is not an Eighth Amendment violation. *Miralle, supra,* 2018 WL 6199929, at *2 ["*Martin* does not establish a constitutional right to occupy public property indefinitely at Plaintiffs' option."]; *see also Frank v. City of St. Louis,* 458 F.Supp.3d 1090, 1093-94 (E.D. Mo. May 2, 2020) ["The City … is therefore not criminalizing the state of being homeless or its unavoidable consequences…. At most, the City is criminalizing sleeping in public in a particular location."]

Finally, Plaintiffs cannot prevail on this claim because they have not alleged facts showing Article III standing.  To having standing, a plaintiff must show that he/she suffered (1) an injury in fact, (2) caused by the defendant's conduct, and that (3) the injury can be redressed in court. *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992).  The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*  An injury is "particularized" if the effects of the alleged wrongdoing affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339-40 (2016).  An injury is "concrete" if it actually exists, meaning it is real, and not abstract. *Id.; Campbell v. Facebook,* 951 F.3d 1106, 1116 (9th Cir. 2020).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

Plaintiffs have not alleged or otherwise proved standing because they have not shown that they are in danger of being ticketed and towed once the Oklahoma Parking Village closes, and that there is nowhere in the County they can go and park their vehicles.  Plaintiffs cite to the Ordinance No. 3460, which was enacted on September 28, 2021.  On its face this Ordinance only precludes overnight parking in the County's unincorporated coastal communities.  It does not apply to the entire County.  See Request for Judicial Notice ("RJN") Ex. "B."  Plaintiffs also cite to Chapter 15.710 of the County Code, but that Chapter only establishes a civil penalty for overnight parking.  It does not criminalize anything.  RJN Ex. "A."  Plaintiffs do not allege, or otherwise prove, that they are under threat of criminal sanction once the site closes.

One Plaintiff, David Richford, alleges that his non-operable vehicle was towed from the site after he was hospitalized, but he also alleges that the County agreed to pay for the towing and for 90-days of storage.  This is a far cry from a situation where the state imposed criminal penalties, or threatened criminal penalties, upon those who are homeless.  *See People of City of Los Angeles Who Are Unhoused v. Garcetti,* 2023 WL 8166940 (C.D. Cal. Nov. 21, 2023) at *11 [finding that plaintiffs pled Article III standing by alleging that the city issued numerous tickets and citations, towing and towing threats upon plaintiffs.][4]

Plaintiffs offer nothing more than speculation and conjecture that they will face criminal penalties for living in their vehicles after the Oklahoma Parking Village closes.  They have not alleged facts establishing Article III standing.

2.    *Plaintiffs are not Likely to Prevail on the Merits of Their Fourteenth Amendment Claim for a State-Created Danger*

The Fourteenth Amendment's substantive due process clause "protects

---

[4] It is also noteworthy that Mr. Richford is living with a relative and no longer living at the Oklahoma Parking Village.  Richford Decl., ¶ 5. To the extent Mr. Richford suffered any injury by anything the County may have done, he has an adequate remedy at law.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1   individuals from arbitrary deprivation of their liberty by government." *Brittain v.*

2   *Hansen,* 451 F.3d 982, 991 (9th Cir. 2006).  As a general rule, the state is not liable

3   its omissions, and there is no duty to protect individuals under the due process

4   clause.  *Martinez v. City of Clovis,* 943 F.3d 1260, 1270 (9th Cir. 2019).

5        The "state-created danger exception" alters this general rule regarding the

6   government's obligation to protect individuals from harm.  *Murguia v. Langdon,* 61

7   F.4th 1096, 1110-11 (9th Cir. 2023).  Under this exception, a plaintiff must plead

8   facts showing that: (i) affirmative conduct on the part of state actors exposed

9   plaintiff to a particularized danger that he/she would not have otherwise faced, and

10   (ii) the state acted with "deliberate indifference" to a "known or obvious danger".

11   *Id.*  The exception depends upon whether the state actor does something that leaves

12   plaintiff in a situation that was more dangerous than the one in which he/she was

13   found.  *See id.; Sinclair v. City of Seattle,* 61 F.4th 674, 681 (9th Cir. 2023);

14   *Hernandez v. City of San Jose,* 897 F.3d 1125, 1133 (9th Cir. 2018); *Munger v. City*

15   *of Glasnow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir. 2000).  The state conduct

16   "must create an actual, particularized danger, and the ultimate injury to the

17   plaintiffs must be foreseeable." *Hernandez,* 897 F.3d at 1133.

18        Plaintiffs have not alleged, nor have they produced evidence, showing that

19   the County or any County employee left them in a worse position than which they

20   were found.  Plaintiffs were living in their recreational vehicles when the County

21   started the Oklahoma Parking Village, and they continue to live in those same

22   vehicles today, with the program winding down.  In other words, according to the

23   facts as pled in the complaint, Plaintiffs are in the same position today that they

24   were in two years ago when the program started, i.e. they are homeless persons who

25   are residing in their vehicles.  These facts do not show a state-created danger, nor

26   do they show that any County employee was deliberately indifferent to a known

27   danger.  Plaintiffs are not likely to prevail on the merits of this claim.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

1    In their *ex parte* application, Plaintiffs argue that the County created the

2    danger when it enacted Ordinance No. 3460.  Dkt. 12, p. 16. Again, this Ordinance

3    does not make it illegal to live in a vehicle anywhere in the County, rather it merely

4    precludes overnight parking in unincorporated coastal communities.  RJN Ex. "B."

5    Plaintiffs cannot rely on this Ordinance because it does not show that they suffered

6    any particularized harm.  *See Sinclair,* 61 F.4th at 681.  Plaintiffs argue that the

7    County's mere naming of the site as a "Safe Parking" area is an admission that

8    every other area is unsafe. Dkt. 12, p. 19.  This argument is a stretch.  The County

9    set this program up with the best of intentions, i.e. bringing people in off the streets,

10   and giving them a fenced off and area with restrooms and 24/7 security so that they

11   could find more permanent housing. See Belch Decl., ¶¶ 3-5. The inviting nature of

12   the site's name (which later changed anyway) does not mean that everything that is

13   outside of the site is unsafe.

14       Plaintiffs also cite *Navarro,* but that case unhelpful.  In that case, the Court

15   denied a motion to dismiss the state created danger claim where the City had argued

16   that parking was not rendered illegal everywhere in City.  The Court denied the

17   motion because plaintiffs had alleged that were not enough remaining spaces left

18   where plaintiffs could park following the enactment of the ordinance, and that

19   allegation had to be accepted as true.  *Navarro v. City of Mountain View,* 2021 WL

20   5205598, at *5 (N.D. Cal. Nov. 9, 2021).  This case is different because Plaintiffs

21   did not alleged, nor have they proved, that there are not enough parking spaces

22   available in the County once the Oklahoma Parking Village is closed.

23       Plaintiffs also point to the Declarations of Mr. Shahoian and McElroy, who

24   supposedly ejected from the site without notice by CAPSLO, and that the CAPSLO

25   then discarded their belongings. Dkt. 12, p. 17.  This does not show that there is a

26   state-created danger that would justify an immediate injunction.  Even if this

27   testimony is true, CAPSLO is a different entity, and to the extent these two

28

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

individuals had their belongings thrown away without notice, they can receive compensation for that, and thus they have an adequate remedy at law. *See Idaho v. Coeur d'Alene Tribe,* 794 F.3d 1039, 1046 (9th Cir. 2015). There no evidence presented that this will occur again once the site is closed. To the contrary, the County is planning to retain any property that is left at the site for 90-days, which will allows Plaintiffs to retrieve any belongings that they may leave behind. Al-Mashat Decl., ¶ 17.

Finally, Plaintiffs argue that there is evidence that County is deliberately indifferent to their plight by closing the Oklahoma Parking Village because they will become homeless. Dkt. 12, p. 20. Not so. The record shows that there are shelters for Plaintiffs to go if they leave the site and cannot drive their vehicles.

3. *Plaintiffs are not Likely to Prevail on the Merits of Their Claims for Unlawful Seizures of Property, or Denial of Due Process*

The Fourth Amendment protects against unreasonable seizures of property, which can occur when there is a meaningful interference with an individual's possessory interest in property. *United States v. Jacobson,* 466 U.S. 109, 113 (1984). The Fourteenth Amendment provides that no state shall deprive a person of life, liberty or property without due process of law. *Fuentes v. Shevin,* 407 U.S. 67, 86 (1972). The Ninth Circuit has held that homeless persons un-abandoned possessions are property, and that the government cannot take the property "like a thief in the night" without announcing its intentions and giving the owner the chance to argue against the take. *Lavan v. City of Los Angeles,* 693 F.3d 1022, 1032 (9th Cir. 2012). In *Lavan,* the Ninth Circuit affirmed an injunction requiring the city to maintain property of homeless persons for at least 90-days before throwing it out. *Id.* at 1024, 1033.

In this case, while Plaintiffs have provided evidence of one incident where CAPSLO discarded property of two individuals without notice, they have not

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

61835.00103\42001503.3

- 24 -

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1    shown that the County is going to discard their property without notice once the

2    County closes the site.  The County has shown that it is not going to do that, rather

3    the County is going to preserve any property that is left at the site for 90-days,

4    which will give the owner the opportunity to get it back. Al-Mashat Decl., ¶ 17.

5        Plaintiffs insinuate that the County failed to provide procedural due process.

6    Dkt. 12, pp. 6-7.  The County did not use any HUD ESG funds to set up or maintain

7    the site.  The County used on general fund and ARPA fund moneys to set up and

8    operate the site.  The County initially used ESG funds to pay CAPSLO, but

9    CAPSLO does not operate the site, rather it only provides case management

10   services.  Moreover, the County has not used ESG funds to pay CAPSLO in over a

11   year, and so even if there was any process due, those requirements are no longer in

12   effect.  Belch Decl., ¶¶ 4-8; Al-Mashat Decl., ¶ 6.

13       4.    *Plaintiffs are not Likely to Prevail on the Merits of Their First*
             *Amendment Claim*

14   The First Amendment protects individuals' freedom of association against

15   government interference.  *NAACP v. Alabama,* 357 U.S. 449, 462 (1958).  In their

16   ex parte application Plaintiffs argue that the closure of the Oklahoma Parking

17   Village will infringe upon the Union and its members. Dkt. 12, p. 22.  But they

18   offer no evidence to support this.  Plaintiffs offer no argument or evidence that the

19   Union will no longer be able to meet once site is closed.  Based on Plaintiffs' own

20   evidence, it appears that this local Union now has the support of a statewide

21   organization, and this Union has legal counsel, and the ability to communicate

22   electronically.  See Maez Decl., Ex. "A."  There is nothing in the record to suggest

23   that this Union will not be able to conduct its business or otherwise gather and

24   associate once the Oklahoma Parking Village is closed.

25

26

27

28

B<small>EST</small> B<small>EST</small> & K<small>RIEGER</small> LLP
A<small>TTORNEYS AT</small> L<small>AW</small>
300 S<small>OUTH</small> G<small>RAND</small> A<small>VENUE</small>, 25<small>TH</small> F<small>LOOR</small>
L<small>OS</small> A<small>NGELES</small>, C<small>ALIFORNIA</small> 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

**D.    The Remaining Factors Weigh Heavily Against a TRO**

To obtain a preliminary injunctive relief, a moving party must show that he/she will suffer irreparable harm, that balance of equities tips in his/her favor, and that a temporary restraining order is in the public interest. *Winter*, 555 U.S. at 20; *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge."). Plaintiffs fail to prove any of the other *Winter* factors.

1.    *Plaintiffs Cannot and do not Show Irreparable Injury*

Plaintiffs bear a heavy burden to show that "irreparable injury is likely in the absence of an injunction." *Winters*, 555 U.S. at 21–22.  To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough.  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir.1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts") Plaintiff has not shown that it would suffer *irreparable* harm.  As shown above, Plaintiffs have not demonstrated any harm because there are places for them to go when the site closes, and there is little risk that their property will be lost.

2.    *The Balance of Equities Tilts in the County's Favor*

The balance of equities and the public interest tilt against the requested injunction. When an injunction is sought against the government, the balance of equities and public interest in part merge. *Drakes Bay Oyster Co.,* 747 F.3d at 1092. Here, the County has shown that the balance of harms tilts in its favor.  This is a temporary program, and the County announced its closure over a year ago.  The

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

County is spending over $65,000 per month to keep this site open, and there are health and safety concerns at the site.  Also, there are places for the remaining people to go.  Also, there is no guarantee that the County will be able to convince the numerous nonprofits to continue supporting this site, and if the nonprofits leave, then what?  The County cannot be forced provide housing and a myriad of other services.  This application should be denied.

## IV.    CONCLUSION

The County respectfully requests that the Court deny Plaintiffs' application for a TRO.

Dated:  February 27, 2024                          Respectfully Submitted,

BEST BEST & KRIEGER LLP


By: */s/  Christopher M. Pisano*
CHRISTOPHER M. PISANO
JEFFREY V. DUNN
Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

1

# CERTIFICATE OF COMPLIANCE

2         The undersigned, counsel of record for Defendant COUNTY OF SAN LUIS

3   OBISPO, certifies that this brief contains 6,653 words, which complies with the

4   word limit of L.R. 11-6-1.

5

6    Dated:  February 27, 2024                    Respectfully Submitted,

                                                  BEST BEST & KRIEGER LLP
7

8
                                                  By: /s/  Christopher M. Pisano
9                                                     _____
                                                      CHRISTOPHER M. PISANO
10                                                    JEFFREY V. DUNN
                                                      Attorneys for Defendant
11                                                    COUNTY OF SAN LUIS OBISPO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2:24-CV-00616
COUNTY OF SAN LUIS OBISPO'S
OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR A TEMPORARY
RESTRAINING ORDER